The case before the court is an appeal from the Merit System Protection Board, case number 153196, Purifoy v. DVA. Mr. Sternhill, do you want three minutes for rebuttal? Three minutes, yes. Okay. You may begin. Thank you, Your Honor. May it please the court. Philip Sternhill for the petitioner, Lamont Purifoy. Mr. Purifoy has faced severe consequences as a result of his struggles with substance abuse. And here, an unfortunate set of circumstances came together and resulted in Mr. Purifoy's removal, all of which were triggered off of his efforts to receive treatment for that substance abuse. What Mr. Purifoy wants is to go back to work at the VA medical facility in Milwaukee. The board's removal of Mr. Purifoy was unreasonable here in light of the Douglas factors. The board failed to adequately consider many of the relevant factors, and its analysis where it existed was cursory at best. Does the board have to consider all of them? We're not asking for a checklist, Your Honor, and I think you're referring to the Nagel decision, which says that irrelevant factors do not have to be considered. We're not saying that the board needs to go through each one, but the board does have to consider relevant factors. And we would submit here factors such as the nature and seriousness of the offense, the notice that was given to Mr. Purifoy, the potential for rehabilitation, and particularly the adequacy of lesser sanctions, especially where you have a situation with an administrative judge sustaining a different charge than was alleged by the agency, a significantly different charge. One question I have for you is, I understand your argument, but what does the board have to do? Do they have to independently assess the relevant Douglas factors, or do they have to look at whether the agency independently assessed the relevant factors? The board does have an obligation. The board does have a de novo obligation to assess the relevant Douglas factors. And one of the problems here is that, at best, the board cited back to the agency's consideration of some of these factors. If you look, for example, at the potential for rehabilitation, it looked back to, and it's what the agency does here in its brief as well, looked back to the agency's consideration in light of the alleged, the proffered charge of the six months of absence. It didn't analyze it relative to the actual sustained charge of the two days at the beginning and the 38 days at the end. So you're saying that basically the board was assessing an entirely different charge than the agency did, but then deferring to the agency's Douglas factor analysis on the much broader charge? Yes, Your Honor. At best, for the factors that it even provided any consideration to, yes, that is what we believe that the board did. So what you really want here is for us to tell the board to go back and look at the Douglas factors? Well, Your Honor. Or explain its look at the Douglas factors? We believe that the record here, the only reasonable outcome from the record here is what the administrative judge did, the careful and well-reasoned analysis that the administrative judge went through. We would, of course, however, believe at a minimum a vacate and remand is required here. The board did recognize that the AHA only sustained the 38-day period out of that six-month charge, and then took the position that, well, even a 40-day period is a serious amount of time. That's a lot of leave time, and went on to talk about why, nonetheless, the mitigation is not appropriate. The board did go on with two pages of analysis. Where did they fall short? Well, I think in two places, Judge Lynn. They fell short in ‑‑ we would submit that they fell short in making a raw comparison of numbers, of simply saying we have 40 days here, and then citing a case where 14 days was serious, and I believe citing another case where seven days was serious, and saying 40 is bigger than 14, and so therefore it's serious. We think that that does not suffice. Without any analysis. Without any further analysis of the facts, that that does not suffice under Douglas in considering the nature and seriousness of the offense. It sounds to me as if you think that it should be remanded not just to the board, but maybe for the board to remand it to the agency for a determination of the 40 days. Am I understanding that, or no? Well, I mean, I think we have the administrative judge's determination, so I don't know that that is necessary. You think we could reverse outright based on the administrative judge's determination? I believe that the case law does permit a reversal of the board's decision, and I think we have the record of the administrative judge to reverse and remand for entrance of the administrative judge's decision. Wouldn't the only basis for that be some sort of thing that there was a credibility determination in the initial decision? I mean, because I don't know that I see a credibility determination based on demeanor here. Respectfully, Your Honor, I believe that the administrative judge's determinations, especially with respect to the notice and the potential for rehabilitation, were replete with credibility determinations. Based on demeanor? Yes, Your Honor. I mean, it's an issue of, with respect to notice, it's an issue of what Mr. Purifoy understood from these conversations, and she received the testimony from, these were verbal communications, one side saying, I communicated this to Mr. Purifoy, Mr. Purifoy saying, this is what I understood. She heard live testimony from both sides of the conversation, and she came to the conclusion, I believe Mr. Purifoy, I heard him and I believe that it was reasonable that he did not understand, that he did not have notice of the potential penalty and notice of the requirements that the agency is alleging for leave. If I may, Your Honor, I'd like to, I would like to come back to the, to the adequacy of the failure to consider lesser sanctions and discuss the agency's brief here, because I think the agency's brief is the prime exhibit with respect to the deficiency of the board's analysis. The agency doesn't defend the board's decision on its merits. The agency defends it entirely based on the proposed charge of the six months. And to be clear, that was not, that was not sustained by the ALJ, that was not, by the administrative judge, that was not disturbed by the board. So any reference here to Mr. Purifoy's stay at the MSDF as incarceration any suggestion that he was not at the MSDF for treatment is really, is not supported, is not supported by the record. And I think that goes as well to, to the nature and the seriousness. Isn't, isn't the government entitled to argue that the agency's original determination is the determination that should ultimately control that, that decision was appropriate? In other words, they're going back before the AJ's determination. If, I understand Your Honor's question to be, could they be arguing an alternative grounds for affirmance in saying that the original charge should have been sustained? Yes. I believe that that's, I believe that's an argument that they could have made. I don't believe they made that argument. But even in that scenario, I don't think it is within this court's purview to enter, to change the sustained charge. I think this court, if, if that's what Your Honor's believed, the appropriate thing to do would be to say the removal penalty cannot be, is not appropriate relative to the 40-day charge, but we would be, we would remand it back to the board for further consideration. And at that point in time, perhaps depending on this court's decision and, and the board. At this point, the government's, the government's role is to defend the board's decision, not to try to say the board should have done something else. Isn't that right? Well, yes, Your Honor. And, and I don't, and I don't think the government here actually does defend the board's decision. I think the government here is, is trying to, to rewrite history and rewrite the record. If I may, Judge Stoll, just to come back to your question on credibility, I would also like to touch on the potential for rehabilitation, because I believe as well that the administrative judge's findings with respect to Mr. Purifoy's pursuit of rehabilitation and the level with which he cared about his job were credibility findings that the administrative judge found. I can appreciate your argument. What about this Havey case, which says that for there to be, for a credibility determination by an administrative judge to be one that the board can't disregard, that it has to be based on demeanor and that there, that's not all credibility determinations. Can you help me to understand? It says it has to be either implicitly or expressly based on demeanor.  As opposed to just seeing, when you look at the agency's decision, for example, there's, in the record, there's something where they have a memo and they evaluate all the Douglas factors, and they seem to omit certain facts, like including the fact that your client initially went and said, hey, I've got a problem, and was put in a facility, and then he ended up going to this other location. None of that is addressed in the agency's memo. Maybe that's just the reason for the difference. But how is it that the AJ actually used a credibility determination, as opposed to just viewing the facts differently, say, or viewing a more complete set of the facts? Because, Your Honor, I guess I'd submit that the degree to which Mr. Purifoy cares about his job is certainly inherently a demeanor-based decision. I think, as well, the reasons for rejecting, the reason that the board and the agency reject Mr. Purifoy's potential for rehabilitation is this claim that he was not taking full responsibility for his actions, which is certainly something that the administrative judge would be observing while receiving live testimony at the hearing. I see that I'm into my rebuttal time. Why don't you save the rest for rebuttal? Thank you. May it please the Court? The Court should affirm that MSPB's final decision sustaining Mr. Purifoy's removal because the board's decision was reasonable and supported by substantial evidence. The board sustained the removal, finding that both charges were sustained, even if only part of the second charge was proven. The board then points to this Court's decision in 1990 from Burroughs v. Department of Army to support that position. I have to say that I was a little confused by your brief, to put it nicely. I mean, I felt like we were talking about two different cases. I mean, you really didn't. Now you're defending the board decision, but your brief seemed to ignore the board decision. Your brief went on and on about the six months and all those AWOL and all the portions of the charge that were not sustained. So why is any of that relevant? Ultimately, Your Honor, the government's position as well as the board's position that the board did not make a decision as to whether or not the six months was applicable or the 38 days. What we see in the board's final decision is them saying, let's just assume what the administrative judge found. Let's assume this 38 days. I don't think they said let's just assume. They said that we'll sustain the lesser charge. They did, Your Honor, but what I mean by that is that there is no fulsome discussion in the board's decision saying here's the reason why we are not accepting six months. They don't take up that issue. But the administrative judge had a really long hearing, went into great detail, and the board says we agree. How are we to read from that that the board really didn't agree, that the board really thought it was much worse, and the board was just sort of saying that and not meaning it? We do not intend to imply that that's what the board meant, and that's not what we're reading into the board's decision. What we agree with and what we defend and believe is supported by the substantial evidence in the board's decision is that even the 38 days, even sustaining the 38-day time period where he was detained and incarcerated at the detention facility, that that in addition to the two days on April 4th and April 5th were enough. They were severe enough, and that was enough to sustain the agency's decision. Even though the board never analyzed the Douglas factors in light of the lesser charge. The board did take up the fact, again, the board's decision is cast accepting the 38 days of the detention facility plus the other two days and saying even with these 42 days, this was severe enough, and then they look to those Douglas factors with which or about which they disagreed with the administrative judge. But didn't they look at the agency's analysis of those Douglas factors and the agency's analysis was based on the six-month period, not the 38 days? The agency certainly mentions the six months, but what we see when we look back at the deciding official's memorandum, that detailed memorandum which is cited by the board, is that the reference is not only to the fact that it was a six-month period. The references there that we see are the fact that it was a continued, unexcused absence, and whether that is a 38-day period of time or 40 days counting the detention period in the previous two days, or whether it's a six-month period, that is not a small amount of time for somebody not to show up for work, not to submit paperwork. But the board never did the analysis. I mean, in fairness, they never once looked at the adequacy of lesser sanctions. So yes, the agency did, and they said we don't want to do lesser sanctions because we're talking six months.  Despite the fact that the penalty range is from 14 days suspension all the way up to termination, doesn't that imply that there has to be some assessment as to whether or not a lesser sanction would be sufficient? I think given the fact, and again, what we see the board do is focus on this fact that this penalty was so severe. I'm sorry, not the penalty, but the charges themselves and the impact that it had on the agency was so severe and was not mitigated by those things cited by the administrative judge. And with respect to the adequacy of the lesser penalties, again, the board relies on what the agency did because the board's position was that once the charges have been sustained, which they were, that the deference is owed to the agency, and unless it exceeds the parameters of reasonableness or the board did not consider the 12 Douglas factors, unless those things happened, that the deference should be given to the chosen penalty of the board. So, yes, there's this broad range. The penalty of the agency. The board says we would defer to the chosen penalty of the agency assuming that the charge is sustained. So this is like saying, okay, your charge is bank robbery. It turns out that it was just littering. And so whatever sentence that the trial court calculated for bank robbery we're going to defer to, even though we're really only looking at littering. I mean, that's a totally different, they're apples and oranges. Respectfully, Your Honor, I would submit that they're oranges and oranges. We're just talking about the size of the orange. Using the burglary example, it would really be more that the charge is burglary and instead of stealing $12 million, you only sold six. He was, in fact, on continued unauthorized absence. He was counseled repeatedly to submit this paperwork, and he simply did not do so. Well, the ALJ didn't find that he was counseled repeatedly to submit the paperwork, and, in fact, the ALJ found, as a matter of fact, that he didn't really receive that notice. Well, with respect to the period when he was in treatment, the ALJ, the administrative judge seems to agree that for that period of time for which he was incarcerated and not receiving treatment, that he is not excused for that period of time for not having submitted paperwork. And so, again, what we have... What about her differing view on the potential for rehabilitation? She says he has good potential for rehabilitation. Why isn't that given any deference by the board? It's not given deference by the board, Your Honor, because that's not a demeanor-based credibility determination. There's nowhere within the administrative judge's opinion where it's implied or it's expressly stated that based on the demeanor of the witness when testifying, I believe what he's saying. And the... Well, it doesn't have to be expressly stated. From the context, it can be clearly implied. And, you know, the context here is several days of testimony in which she fleshes out everything that happened, including what she apparently believed to be some real unfairness in terms of the way he was treated, and, you know, both by the agency and by the parole officer. So, I mean, how do we say that a potential for rehabilitation doesn't have, you know, everything to do with demeanor? Well, I think even if the court were to find that it were a demeanor-based credibility determination, that in and of itself is not insulated from the board reaching a different conclusion if it has sound reasons for doing so, and that's reflected in the record. And here, what the board refers to when it addresses this issue on the ability or, I'm sorry, the likelihood for rehabilitation is it goes back to those findings of the deciding official and says, we have a deciding official here who is saying that this man is not, is no longer, although he was in the beginning, and the agency was behind him in the beginning when he was taking these steps towards treatment. When he threatened the inmate in treatment and was forced into lockup, at that point he was not taking responsibility for his treatment. At the point at which he never communicated what his address would be when he was gone and away from work for those 40 days, he never communicated that to the agency. That's not taking responsibility. What about the fact that in the agency's memorandum decision on considering this factor, it doesn't even talk about the fact that he went to his third-line supervisor and said, hey, I've got a problem, and that third-line supervisor sent him to a VA facility for treatment, and then this whole thing happened with the parole officer and everything. But it's not even addressed. How is it that the agency can make an informed Douglas analysis without even addressing that part of the rehabilitation facts? I think looking into the whole of what Mr. Purifoy did, I think that is reflected in the deciding official. But when we're talking about now where we are, not where he started in the beginning, not when he was... He's not even addressed in the agency decision. How can you say it's reflected? I may be mistaken, Your Honor. I thought that it was mentioned in the beginning that he was initially at the VA medical center, but in any event... But it wasn't mentioned, as the ALJ brings out, that it was actually his own supervisor who sent him there and said, take care of yourself, get yourself where you need to be. And so the ALJ felt that there could be a reasonable assumption that he could continue in treatment to the extent that he was able to do so until he was healthy. Respectfully, Your Honor, I am sympathetic to Mr. Purifoy's position. I believe that the agency was initially sympathetic to Mr. Purifoy's position, and that's why they did what they did. That's why they excused the time for which he was going to be in treatment voluntarily. It was the series of bad decisions that Mr. Purifoy made after he left treatment at the VA medical center that leaves us where we are now, and that is what reflects what his current possibility or potential for rehabilitation is. And so when you look at the series of bad mistakes that he made, it was certainly rational, even if we disagree, even if the court disagrees, it was certainly rational for the agency to reach the conclusion that it reached, and it was reasonable and supported by the evidence for the board to look at the agency's point of view on this and take that side and disagree with what the administrative judge found. You said that you thought the memo addressed where he reported to his third-line supervisor, or at least where he went to an initial treatment facility. I see that nowhere. I'm looking at page 186, for example, under the heading potential for employee's rehabilitation. Can you tell me where you see that? I will take a quick look, Your Honor. As I mentioned, I may be mistaken on that. But I think Your Honor is correct. It seems to pick up with his transfer or his entering the detention facility. And again, I think that simply reflects what really created the problem here. And so I think it's fair for— I think Your Honor is absolutely correct to say that it's certainly commendable that he took these steps— No, that's not my point. I'm sorry. My point is that they were evaluating something called potential for employee's rehabilitation, and there are certain facts that seem to maybe relate to that, and they didn't take them into account. I'm not trying to reweigh their determination. Okay? I just want to make sure you know where I'm at. I'm just trying to— I don't see that they're taking into account all of the relevant information. I think Your Honor is correct that that's not mentioned in that particular Douglas factor, but I'm not sure that it's relevant at the point at which this was written. And that's to say that this was written in October of 2013. At this point, again, we have these unexcused absences. We have—whether you count it beginning at six months or whether you count it after Mr. Purifoy had been kicked out of the treatment program at the detention facility. We have continued unexcused absences, and it's at that point that the agency evaluates what his potential for rehabilitation is at that point. And at that point, what Mr. Purifoy has is a series of bad decisions, and that was the basis or appears to be the basis for what the deciding official evaluated. So you're saying they can pick the point in time on a continuum at which they choose to start assessing potential for rehabilitation and ignore everything that started down this road? I'm not suggesting that at all, Your Honor. I am saying that as it relates to the charges, and those charges were the periods of his absence without leave. And so the period, even if we take the 38 days, the two days where he was absent due to substance abuse and the 30 days where he was in the detention facility and not receiving treatment, what's relevant to those charges is where he was, what his state of mind was, and relevant to that, he still had obligations. And so the question is, did he act responsibly even in light of what he was going through? And the answer here is clearly no. He was told to submit paperwork. He did not submit paperwork, even if he understood for the period of his treatment that he did not need to do so. It was clear that before he even left for treatment at the VA Medical Center that he needed to submit paperwork for those two days that he missed prior to entering voluntary treatment. He never did that. When he spoke with HR after that, and I'm sorry, when he was incarcerated, the period that even the administrative judge agrees that he was incarcerated, for that period of time, there was no effort on the part of Mr. Purifoy to submit the required paperwork, and that simply isn't... You know, it's not a small thing to have to comply with the terms of your employment, and we're not looking at one or two days. Again, we are looking at 40 days, that's in work days, you know, somewhere in the neighborhood of six weeks. It's hard to believe that any of us wouldn't expect to be removed from our employment if we were absent for a period of six weeks, regardless of the reason, without submitting the paperwork that was required, of which we were trained and notified of. Okay. If the panel has no further questions, again, we respectfully request that the court affirm the board's decision.  You have about two minutes for rebuttal. Thank you, Your Honor. I just want to pick up on something that my colleague said. She kept referring to a series of bad decisions that Mr. Purifoy made, and I'm really kind of perplexed as to what those bad decisions were. When you look at the page that Judge Stoll directed us to, at 186, in terms of the potential for rehabilitation, what the agency looked at in saying that he did not have a good potential for rehabilitation, they were treating that entire period at the MSDF, that entire six months, as incarceration. There are several problems with that. One, there is not evidence in the record, and the ALJ rejected the contention that Mr. Purifoy was incarcerated. But it also ignores the fact that Mr. Purifoy was in the MSDF because he had voluntarily sought treatment at the VA medical facility. So I'm not sure whether the government's saying that his compliance with his parole agent to report to the MSDF was a bad decision or his entrance into the alternative to revocation process at the MSDF was a bad decision. This was written not from the perspective of his exit from the treatment program. It was written from the perspective of him being at the MSDF in the first place. What do you say in response to counsel's argument that he didn't submit the paperwork and he was out for several weeks? And everybody knows if you're going to be out for that long, you've got to at least submit your paperwork. Well, there are two issues with that, Your Honor. The first is that when he entered the VA medical facility to receive treatment, he received verbal approval from his supervisor, who at that time said to him, go take care of yourself. You're going to need to submit paperwork. He admittedly did not submit paperwork when he went to Madison to receive treatment. He was excused for that period of time and found that he was authorized to have leave. He had a similar verbal conversation with his supervisor before he entered the MSDF. His testimony at the hearing with the administrative judge was, I understood that I was following the directions by attempting to contact, by telephone, my supervisors. And there's additionally testimony at the hearing in front of the administrative judge that verbal approval is often given for leave. So it is not that it's this wildly impossible scenario that he would understand that verbal approval was sufficient for him to request leave. When he was made aware, when the agency raised this contention of not submitting the required paperwork, and they did that in their first removal decision, he responded in writing in his first removal decision, said, I understood the verbal approval to be enough. If I was incorrect, I'm hereby requesting leave. The agency ignored that, and so you have this extended period of AWOL that they eventually charged him with that was really of their own making. They knew where he was. He had told them where he was. He told his supervisor where he was going. He at a minimum requested leave, or at least requested how to obtain the leave in response to their removal action, and yet they kept him AWOL until his release in November. So this contention that they didn't know where he was, that he was not making any effort to apprise the agency of where he was or to obtain the required leave is really just not supported by the record. What about the fact that his treatment was terminated when he was at the detention facility, and is there no obligation on his part at that point? He knew he was not going to be able to go back to work for a long period of time. He knew that his treatment was effectively over. No obligation to at least pick up the phone? I mean, yes, had he picked up the phone, that would have been better, but his release from the MSCF, the end of the program would have taken him up to that release date, so it's not as though he was there for some extended period of time beyond what he had told his supervisor with respect to that date. Before he entered the treatment program at the MSCF, what he said to HR at the BAMC was, I'm entering this alternative revocation program. This treatment program starts in July, and it will run through the end of October. He was eventually released on November 3rd or 4th, I believe. There are no further questions. Thank you, Your Honor. The case will be submitted. This court is adjourned. All rise. Your Honor, the court is dismissed from date today. I'll talk to the agency. We're not going to filter anything. Yeah, I'll definitely need to bring that up in the trial date. Okay. Yeah, as I said, he wants to go back to court, so whatever kind of damage that happened,    Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you. Thank you. Thank you. Yeah, I was saying, is it just almost sticky? Yeah, I guess I can go ahead. I could figure it out. Yeah. It's the meaning of the game, but it's either a ceiling fan or a vent. I'm better off, you know, taking care of the ceiling fan. That's a problem in a basement. Or putting the rooms in the toilet. Because if it's just the stickiness on those, or the divergence, then it's not a problem. Thanks for watching!